# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **KAREN N. CHANDLER,** | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:05cv00064 |
| | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| | ) | |
| | ) | |
| **LINDA S. MCMAHON,**[1] | ) | |
| **Acting Commissioner of** | ) | |
| **Social Security,** | ) | By:   PAMELA MEADE SARGENT |
| Defendant | ) | United States Magistrate Judge |

*I. Background and Standard of Review*

Plaintiff, Karen N. Chandler, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claim for disability insurance benefits, ("DIB"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 423. (West 2003 & Supp. 2006). Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

---

[1]On January 20, 2007, Linda S. McMahon became the Acting Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Linda S. McMahon should be substituted, therefore, for Commissioner Jo Anne B. Barnhart as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Case 2:05-cv-00064-JPJ-PMS   Document 18   Filed 02/16/07   Page 1 of 23   Pageid#: 99

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987.) Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966.) "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642.)

The record shows that Chandler protectively filed an application for DIB[2] on January 21, 2003, alleging disability as of November 6, 2002,[3] due to back problems, migraine headaches, nerves, depression, right hip and leg problems and female problems. (Record, ("R."), at 225-28, 229, 242.) The claim was denied initially and upon reconsideration. (R. at 209-11, 214, 215-17.) Chandler then requested a hearing before an administrative law judge, ("ALJ"). (R. at 218.) The ALJ held a hearing on January 24, 2005, at which Chandler was represented by counsel. (R. at 49-67.)

By decision dated February 24, 2005, the ALJ denied Chandler's claim. (R. at 17-32.) The ALJ found that Chandler last met the insured status requirements of the

---

[2]This is Chandler's fourth application for DIB. (R. at 17-18.)

[3]This is the date following the ALJ's previous decision. (R. at 51, 191-200.)

Act for DIB purposes on December 31, 2004, but not thereafter.[4]  (R. at 30.) He further found that Chandler had not engaged in substantial gainful activity since November 6, 2002.  (R. at 30.) The ALJ found that Chandler suffered from severe impairments, namely mild degenerative changes of the dorsal and lumbar spine, a history of piriformis syndrome,[5] a history of right knee arthroscopy and partial meniscectomy with good results, headaches appropriately managed with medication and a depressive disorder, but he found that Chandler did not have an impairment or combination of impairments listed at, or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 26, 30.)  The ALJ found that Chandler's allegations regarding her limitations were not totally credible.  (R. at 30.) The ALJ found that Chandler had the residual functional capacity to perform light work.[6]  (R. at  30.) The ALJ further found that Chandler was limited as indicated by the assessment completed by Donna Abbott, M.A., a licensed psychological examiner.  (R. at 30, 765-67.) The ALJ found that Chandler was able to perform her past relevant work as a cashier or insurance billing clerk.  (R. at 30.) Thus, the ALJ found that Chandler was not under a disability as defined by the Act and was not eligible for benefits at any time through the date of

---

[4]The issue currently before this court is whether substantial evidence supports the ALJ's decision that Chandler was not disabled during the period from November 6, 2002, the date after the ALJ's prior decision, to December 31, 2004, the date Chandler was last insured.

[5]Piriformis syndrome is an irritation of the sciatic nerve caused by compression of the nerve within the buttock by the piriformis muscle.   Typically, the pain of piriformis syndrome is increased by contraction of the piriformis muscle, prolonged sitting or direct pressure applied to the muscle.  Piriformis syndrome is one of the causes of sciatica.  Piriformis syndrome can cause difficulty walking due to pain in the buttock and lower extremity. *See* http://www.medterms.com/script/main/art.asp?articlekey=8210.

[6]Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds.  If someone can perform light work, she also can perform sedentary work. *See* 20 C.F.R. § 404.1567(b) (2006).

his decision. (R. at 30-32.) *See* 20 C.F.R. § 404.1520(f) (2006).

After the ALJ issued his opinion, Chandler pursued her administrative appeals, (R. at 950), but the Appeals Council denied her request for review. (R. at 10-13.) Chandler then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981 (2006.) The case is before this court on Chandler's motion for summary judgment filed May 26, 2006, and the Commissioner's motion for summary judgment filed June 20, 2006.

## II. Facts

Chandler was born in 1973, (R. at 53), which classifies her as a "younger person" under 20 C.F.R. § 404.1563(c) (2006). She has a high school education and one year of college. (R. at 53.) Chandler has past relevant work experience as an insurance billing clerk and a retail store manager. (R. at 53-55.) Chandler testified that she could stand for 30 minutes without interruption. (R. at 57.) She stated that she was not seeing a mental health professional. (R. at 59.) She denied crying spells. (R. at 59.) Chandler stated that her depression would not prevent her from working. (R. at 59.)

Donna Bardsley, a vocational expert, also was present and testified at Chandler's hearing. (R. at 62-66.) Bardsley classified Chandler's work as an insurance billing

-4-

Case 2:05-cv-00064-JPJ-PMS   Document 18   Filed 02/16/07   Page 4 of 23   Pageid#: 102

clerk as sedentary[7] and semiskilled, her job as a cashier as light and unskilled and her job as a retail store assistant manager as light and semiskilled. (R. at 63.) Bardsley was asked to consider a hypothetical individual of Chandler's height, weight, education and work experience, who could perform light work and who was limited as indicated in the assessment of Abbott. (R. at 63, 765-67.) Bardsley testified that such an individual could perform jobs existing in significant numbers in the national economy as long as the problem with reliability was not interpreted to cause her to miss one day of work a month. (R. at 63.) She stated that such an individual could perform jobs, including those of a cashier, a sales clerk, an information clerk, an order clerk, a cleaner, a hand packager and a sorter. (R. at 63-64.) Bardsley was then asked to assume the same facts, but that the individual was limited to sedentary work. (R. at 64.) Bardsley stated that there were jobs available that the individual could perform, including jobs as a cashier, an information clerk, an order clerk, a hand packager and a sorter. (R. at 64.) Bardsley stated that there would be no jobs available if the individual was limited as indicated by Robert S. Spangler, Ed.D., a licensed psychologist. (R. at 64, 94-102.)

In rendering his decision, the ALJ reviewed records from Dr. Gary S. Williams, M.D.; Dr. Dennis Aguirre, M.D., a neurologist; Robert S. Spangler, Ed.D., a licensed psychologist; B. Wayne Lanthorn, Ph.D., a licensed clinical psychologist; Donna Abbott, M.A., a licensed psychological examiner; Dr. Douglas P. Williams, M.D., a neurologist; Dr. Donald Williams, M.D., a state agency physician; Dr. Frank M.

_____

[7]Sedentary work involves lifting weighing up to 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. *See* 20 C.F.R. § 404.1567(a) (2006).

-5-

Johnson, M.D., a state agency physician; Joseph Leizer, Ph.D., a state agency psychologist; Howard Leizer, Ph.D., a state agency psychologist; Wellmont Lonesome Pine Hospital; and Dr. Christopher M. Basham, M.D.

Chandler has a long history of treatment for back pain beginning in May 1991 when she was involved in a motor vehicle accident. (R. at 303.)

In January 2000, Dr. Gary S. Williams, M.D., saw Chandler for her complaints of pain in her tail bone. (R. at 566-68.) She also complained of migraine headaches, but she indicated that they had been decreasing in frequency and mostly occurred around her menstrual cycle. (R. at 568-69.) Chandler was able to heel and toe walk without difficulty. (R. at 566.) Dr. Williams diagnosed piriformis syndrome, coccydynia,[8] anxiety and depression related to Chandler's father's death and migraines. (R. at 567.) In October 2000, Chandler reported that Percocet and Remeron were helping her back pain. (R. at 554.) On January 26, 2001, Chandler reported that she was doing better and getting out with her family more. (R. at 550.) She refused to participate in physical therapy, but she was responding to her mediation. (R. at 550.) On February 23, 2001, Dr. Williams reported inconsistencies on examination suggestive of symptom magnification. (R. at 548.)

In January 2002, Chandler reported that she was "all right." (R. at 534.) Dr. Williams reported that Chandler's physical exam was inconsistent, and he referred her to a pain management specialist. (R. at 534.) On March 11, 2002, Dr. Williams

---

[8]Coccydynia refers to pain in the coccyx and neighboring region. *See* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, ("Dorland's"), 352 (27th ed. 1988).

reported that Chandler looked the best that he had seen her since he had been following her. (R. at 533.) She appeared more relaxed and calm and had a full affect. (R. at 533.) She was able to toe and heel walk with slight difficulty. (R. at 533.) X-rays of Chandler's lumbar spine performed on March 21, 2002, showed no acute compression, mild scoliosis and slight disc space narrowing at the lumbosacral junction. (R. at 702.) X-rays of her cervical spine showed some degree of straightening of the curvature with no acute bony injury. (R. at 703.)

On July 1, 2002, Dr. Williams completed a medical assessment indicating that Chandler had the ability to occasionally lift and carry items weighing up to five pounds and frequently lift and carry items weighing less than five pounds. (R. at 524-26.) He indicated that Chandler had the ability to stand and/or walk for up to three hours in an eight-hour workday and that she could do so for up to 20 minutes without interruption. (R. at 524.) He reported that Chandler could sit for up to three hours in an eight-hour workday and that she could do so for up to 15 minutes without interruption. (R. at 525.) Dr. Williams reported that Chandler could never climb, stoop, kneel, balance, crouch or crawl. (R. at 525.) He indicated that Chandler's ability to reach, push and pull were affected. (R. at 525.) He further indicated that Chandler should not work around heights, moving machinery, temperature extremes, chemicals, dust, noise, fumes, humidity or vibration. (R. at 526.) Dr. Williams also completed a mental assessment indicating that Chandler had a fair to no ability to perform work-related activities. (R. at 527-29.) He did indicate that Chandler could manage her own funds. (R. at 529.)

On July 23, 2002, an MRI of Chandler's cervical spine was normal. (R. at 756.)

-7-

An MRI of Chandler's lumbar spine showed broad based disc protrusions at the L4-5 and L5-S1 levels and reactive marrow edema at the L5-S1 level due to end plate degeneration. (R. at 757.) On August 12, 2002, Chandler reported that her headaches were better, but she continued to complain of back pain. (R. at 522.) Dr. Williams reported that Chandler's gait was somewhat inconsistent and she appeared to be engaging in symptom magnification. (R. at 522.) Chandler's response to testing was out of proportion to the physical findings. (R. at 522.) On November 26, 2002, Chandler complained of pain, weakness and numbness in her right leg. (R. at 515.) She also complained of extreme difficulty walking and had the nurse place her in a wheelchair to enter the examination room. (R. at 515.) Dr. Williams noted that Chandler walked with a very nonphysiologic gait, and her exam was entirely inconsistent. (R. at 515.) Chandler complained of a cough, but her cough pattern was unconvincing and suggestive of malingering. (R. at 514.) After Dr. Willimas examined Chandler, she managed to walk out of the office, walk to the receptionist and walk to her car with her chronic "limp" and no overt evidence of weakness. (R. at 514.) Dr. Williams reported that Chandler was the worst case of symptom magnification that he had ever seen in his 20 years of medical practice. (R. at 515.) On February 6, 2003, Dr. Williams confronted Chandler about her drug-seeking behavior. (R. at 510.)

On April 2, 2003, Dr. Williams indicated that Chandler should not lift items weighing more than five pounds until she was reassessed. (R. at 507.) On May 19, 2003, Dr. Williams reported that Chandler's examination was a little inconsistent. (R. at 506.) He reported symptom magnification. (R. at 506.) On June 27, 2003, Dr. Williams reported that Chandler appeared to be in less pain and less dysphoric. (R. at 505.) On November 19, 2003, Chandler reported that she was doing better. (R. at

-8-

911.) Dr. Williams reported that Chandler walked with a minimal limp, and her range of motion was full. (R. at 911.) Chandler did not appear to be in any severe psychological distress. (R. at 911.) On January 22, 2004, an MRI of Chandler's lumbar spine showed degenerative disc changes at the L4-5 and L5-S1 levels. (R. at 906.) There was no evidence of any disc extrusion or nerve root compromise. (R. at 906.)

On May 29, 2002, Chandler saw Robert S. Spangler, Ed.D., a licensed psychologist, for a psychological evaluation. (R. at 94-98, 730-34.) Spangler noted that Chandler seemed socially confident, but depressed and anxious. (R. at 94, 730.) Spangler reported that she was appropriately persistent on tasks. (R. at 94, 730.) He further noted that Chandler was alert and fully oriented, had adequate recall of remote and recent events, was depressed and mildly anxious, exhibited concrete thinking and poor insight. (R. at 96, 732.) Spangler administered the Wechsler Adult Intelligence Scale-Third Edition, ("WAIS-III"), test, on which Chandler obtained a verbal IQ score of 81, a performance IQ score of 84 and a full-scale IQ score of 80, placing her in the low average range of intelligence. (R. at 97, 733.) He diagnosed her with depressive disorder, not otherwise specified, moderate, panic disorder without agoraphobia, mild to moderate, and low average intelligence. (R. at 97, 733.)

Spangler also completed a mental assessment, finding that Chandler had a satisfactory ability to understand, remember and carry out simple job instructions, between a satisfactory and seriously limited, but not precluded, ability to follow work rules, to relate to co-workers, to use judgment, to interact with supervisors, to maintain attention and concentration, to function independently and to maintain personal appearance, a seriously limited, but not precluded, ability to deal with the public, to

deal with work stresses, to behave in an emotionally stable manner and to relate predictably in social situations, a substantially precluded ability to understand, remember and carry out detailed job instructions and to demonstrate reliability and no ability to understand, remember and carry out complex job instructions. (R. at 101-02, 737-38.)

On August 1, 2002, B. Wayne Lanthorn, Ph.D., a licensed clinical psychologist, and Donna Abbott, M.A., a licensed psychological examiner, evaluated Chandler at the request of Disability Determination Services. (R. at 151-59, 759-64.) Chandler reported that she was not involved in any psychiatric treatment at that time. (R. 152, 760.) Lanthorn and Abbott noted that Chandler was fully oriented, but only marginally cooperative. (R. at 153, 761.) She was able to attend, concentrate, follow directions and complete tasks. (R. at 153, 761.) Lanthorn and Abbott opined that Chandler was of low average intelligence, but again noted that she did not put forth her best effort. (R. at 154, 762.) They noted no overt signs of disordered thought processes or delusional thinking. (R. at 153, 761.) Lanthorn and Abbott diagnosed dysthymic disorder, rule out generalized anxiety disorder, and assessed a then-current Global Assessment of Functioning, ("GAF"), score of 65.[9] (R. at 155, 763.) They noted that Chandler appeared to attempt to present herself in a negative light at times. (R. at 155, 763.)

---

[9]The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994). A GAF of 61 to 70 indicates "[s]ome mild symptoms ... OR some difficulty in social, occupational, or school functioning ... , but generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV at 32.

Abbott also completed a mental assessment, finding that Chandler had an unlimited ability to understand, remember and carry out simple job instructions, a more than satisfactory ability to maintain personal appearance and a satisfactory ability to follow work rules, to relate to co-workers, to deal with the public, to use judgment, to interact with supervisors, to function independently, to maintain attention and concentration, to understand, remember and carry out detailed job instructions, to behave in an emotionally stable manner and to relate predictably in social situations. (R. at 157-59, 765-67.) Abbott concluded that Chandler had a poor or seriously limited, but not precluded, ability in only three areas of adjustment, namely dealing with work stresses, understanding, remembering and carrying out complex job instructions and demonstrating reliability. (R. at 158, 766.) Abbott concluded that Chandler retained the ability to manage benefits in her own best interest. (R. at 159, 767.) Abbott indicated that it was Chandler's physical, not mental, complaints that might limit her ability to handle stress and demonstrate reliability. (R. at 158, 766.)

On November 19, 2002, Dr. Douglas P. Williams, M.D., a neurologist, evaluated Chandler for her complaints of headaches. (R. at 798.) Examination showed that Chandler's cranial nerves were intact and her muscle strength was symmetric bilaterally. (R. at 798.) Chandler's reflexes were intact and her "[g]ait, cerebellar and Romberg" were "unremarkable." (R. at 798.) Dr. Williams diagnosed migraine headaches. (R. at 798.) On January 14, 2003, Chandler reported that medication had helped her headaches. (R. at 797.)

On January 27, 2003, Chandler was admitted to Wellmont Lonesome Pine Hospital for complaints of uncontrolled pain. (R. at 836-47.) She complained of severe

-11-

right temporal pain, right-sided neck pain and diffuse musculoskeletal pain. (R. at 836.) Chandler had full range of motion of her neck, and a neurological exam was nonfocal. (R. at 840.) The examining physician noted that Chandler was uncooperative with the overall examination so the results were incomplete. (R. at 840.) A CT scan of Chandler's brain was normal. (R. at 843.) Upon discharge, Chandler attempted to get a prescription for additional Percocet, first claiming that she had run out of them at home, then admitting that she still had a few. (R. at 837.)

On July 22, 2003, Dr. Donald Williams, M.D., a state agency physician, completed an assessment indicating that Chandler had the residual functional capacity to perform light work. (R. at 857-64.) He indicated that Chandler could occasionally climb, balance, stoop, kneel, crouch and crawl. (R. at 859.) No manipulative, visual, communicative or environmental limitations were noted. (R. at 860-61.) These findings were affirmed by Dr. Frank M. Johnson, M.D., another state agency physician, on October 14, 2003. (R. at 864.)

On July 22, 2003, Joseph Leizer, Ph.D., a state agency psychologist, completed a mental assessment indicating that Chandler suffered from an affective disorder and anxiety-related disorder. (R. at 879-94.) Leizer indicated that Chandler had moderate limitation in her ability to perform activities of daily living, to maintain social functioning and to maintain concentration, persistence or pace. (R. at 889.) He found that Chandler had not experienced any episodes of decompensation. (R. at 889.) These findings were affirmed by Howard Leizer, Ph.D., another state agency psychologist, on October 14, 2003. (R. at 879.)

-12-

Leizer completed a mental assessment indicating that Chandler was moderately limited in her ability to understand, remember and carry out detailed instructions, to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, to work in coordination with or proximity to others without being distracted by them, to complete a normal workday or workweek without interruptions from psychologically based symptoms, to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, to get along with co-workers, to maintain socially appropriate behavior and to set realistic goals or make plans independently of others. (R. at 895-97.) These findings were affirmed by state agency psychologist Howard Leizer on October 14, 2003. (R. at 897.)

On January 10, 2005, Dr. Christopher M. Basham, M.D., examined Chandler for complaints of low back pain. (R. at 934.) Examination was normal and showed normal strength and sensation. (R. at 934.)

*III. Analysis*

The Commissioner uses a five-step process in evaluating DIB claims. *See* 20 C.F.R. § 404.1520 (2006). *See also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. § 404.1520 (2006). If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review

-13-

does not proceed to the next step. *See* 20 C.F.R. § 404.1520(a) (2006).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. § 423(d)(2)(A) (West 2003 & Supp. 2006); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated February 24, 2005, the ALJ denied Chandler's claim. (R. at 17-32.) The ALJ found that Chandler suffered from severe impairments, namely mild degenerative changes of the dorsal and lumbar spine, a history of piriformis syndrome, a history of right knee arthroscopy and partial meniscectomy with good results, headaches appropriately managed with medication and a depressive disorder, but he found that Chandler did not have an impairment or combination of impairments listed at, or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 26, 30.) The ALJ found that Chandler had the residual functional capacity to perform light work. (R. at 30.) The ALJ further found that Chandler was limited as indicated by the assessment completed by Abbott and Lanthorn. (R. at 30, 765-67.) The ALJ found that Chandler was able to perform her past relevant work as a cashier or insurance billing clerk. (R. at 30.) Thus, the ALJ found that Chandler was not under a disability as defined by the Act and was not eligible for benefits at any time through

-14-

the date of his decision.  (R. at 30-32.)  *See* 20 C.F.R. § 404.1520(f) (2006).

In her brief, Chandler argues that the ALJ erred by failing to give controlling weight to the opinion of her treating physician, Dr. Williams. (Motion For Summary Judgment And Memorandum Of Law On Behalf Of The Plaintiff, ("Plaintiff's Brief"), at 4-14.) Chandler also argues that the ALJ erred by failing to properly assess the effect of pain on her ability to perform substantial gainful employment. (Plaintiff's Brief at 14-21.) Chandler further argues that the ALJ erred in finding that the testimony of the vocational expert supports his finding that she could return to her past relevant work. (Plaintiff's Brief at 21-22.)

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings.  This court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided her decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456.  In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Chandler first argues that the ALJ erred by rejecting the opinions of Dr. Gary S. Williams, M.D., her treating physician.  I disagree.  The ALJ must consider objective medical facts and the opinions and diagnoses of both treating and examining medical professionals, which constitute a major part of the proof of disability cases. *See*

-15-

*McLain*, 715 F.2d at 869.  The ALJ must generally give more weight to the opinion of a treating physician because that physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability.  20 C.F.R. § 404.1527(d)(2) (2006).  However, "circuit precedent does not require that a treating physician's testimony 'be given controlling weight.'" *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (quoting *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)).  In fact, "if a physician's opinion is not supported by the clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590.

In his opinion, the ALJ stated that he was rejecting Dr. Williams's opinion of physical and mental disability because it was inconsistent with the objective medical evidence.  (R. at 29-30.)  Only four months before offering his opinion of disability, Dr. Williams reported that Chandler looked the best that he had seen her since he became her physician.  (R. at 533.) X-rays of Chandler's lumbar spine showed no more than mild scoliosis and some degenerative changes.  (R. at 702.) A CT scan of Chandler's head was negative, an MRI of her cervical spine was normal and an MRI of her lumbar spine showed no more than degenerative changes without any evidence of disc extrusion or nerve root compromise.  (R. at 140-42, 756, 906.) Chandler's neurologist reported that her muscle strength and reflexes were intact and her gait was unremarkable.  (R. at 798.) An MRI of Chandler's brain was normal, and Chandler's migraine headaches responded to treatment with medication.  (R. at 522, 795.) "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986). Dr. Williams repeatedly reported that Chandler exaggerated her symptoms, and he reported that Chandler

-16-

exhibited the worst case of symptom magnification that he had seen in his 20 years of medical practice. (R. at 506, 514-15, 517, 522, 548.) Thus, given the inconsistencies between Dr. Williams's physical assessment and his own treatment notes, as well as the findings and opinions of other medical sources contained in the record, I find that substantial evidence supports the ALJ's rejection of Dr. Williams's opinions.

Chandler also argues that the ALJ erred by failing to properly consider the effect of her pain on her ability to perform substantial gainful activity. Again, I disagree. The Fourth Circuit has adopted a two-step process for determining whether a claimant is disabled by pain. First, there must be objective medical evidence of the existence of a medical impairment which could reasonably be expected to produce the actual amount and degree of pain alleged by the claimant. *See Craig*, 76 F.3d at 594. Second, the intensity and persistence of the claimant's pain must be evaluated, as well as the extent to which the pain affects the claimant's ability to work. *See Craig*, 76 F.3d at 595. Once the first step is met, the ALJ cannot dismiss the claimant's subjective complaints simply because objective evidence of the pain itself is lacking. *See Craig*, 76 F.3d at 595. This does not mean, however, that the ALJ may not use objective medical evidence in evaluating the intensity and persistence of pain. In *Craig*, the court stated:

> Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers. ...

-17-

*Craig*, 76 F.3d at 595.

In his decision, the ALJ noted that he had considered all of Chandler's allegations of disabling pain and other symptoms. (R. at 27.) However, he further noted that the record did not demonstrate that Chandler had a medically determinable impairment or combination of impairments that would be expected to result in severe or disabling pain. (R. at 27.) The evidence of record supports this finding. Chandler has undergone extensive diagnostic testing, all of which reveal findings not deemed significant. For instance, x-rays, CT scans and MRIs of the lumbar spine have shown only degenerative disc disease and mild scoliosis, but as previously discussed, no nerve root compression. (R. at 604, 620, 624, 702, 747-48, 756-57, 906, 933-34). Clinical examinations also failed to show any nerve root involvement. (R. at 421, 533, 566, 840, 934.) Chandler's condition has never required her to undergo back surgery, and her medical records indicate that her right knee surgery was successful, leaving her with no significant abnormality of her right lower extremity. (R. at 497.) Furthermore, Chandler's headaches appear to be controlled with medication, and none of Chandler's treating or examining physicians indicated that it was necessary for her to rest extensively or to lie down during the day. Finally, I note that there have been serious concerns voiced by several treating sources regarding Chandler's credibility, as outlined previously.

For all of these reasons, I find that substantial evidence supports the ALJ's finding that Chandler does not suffer from disabling pain.

-18-

Chandler further argues that the ALJ erred in finding that the testimony of the vocational expert supports his finding that she could return to her past relevant work. Based on my review of the record, I find that substantial evidence does not support this finding. The ALJ found that Chandler had the residual functional capacity to perform light work which allowed the restrictions as indicated by Abbott. (R. at 26, 157-59, 765-67.) The ALJ noted that this finding was consistent with the findings of the state agency psychologist. (R. at 26.) I do not agree. Abbott found that Chandler had a satisfactory ability to follow work rules, to relate to co-workers, to deal with the public, to use judgment, to interact with supervisors, to function independently, to maintain attention and concentration, to understand, remember and carry out detailed job instructions, to behave in an emotionally stable manner and to relate predictably in social situations. (R. at 157-59, 765-67.)

Leizer found that Chandler had moderate limitation in her activities of daily living, in maintaining social functioning and in maintaining concentration, persistence and pace. (R. at 889.) Furthermore, Leizer completed a mental assessment indicating that Chandler was moderately limited in various work-related abilities, including her ability to complete a normal workday or workweek. (R. at 895-97.) In addition, Spangler indicated that Chandler had a satisfactory to seriously limited, but not precluded, ability to follow work rules, to relate to co-workers, to use judgment, to interact with supervisors, to maintain attention and concentration, to function independently and to maintain personal appearance, a seriously limited, but not precluded, ability to deal with the public, to deal with work stresses, to behave in an emotionally stable manner, and to relate predictably in social situations, a substantially precluded ability to understand, remember and carry out detailed job instructions and

-19-

to demonstrate reliability and no ability to understand, remember and carry out complex job instructions. (R. at 101-02, 737-38.) The vocational expert testified that there would be no jobs available that an individual could perform if she were limited as assessed by Spangler. (R. at 64.) The vocational expert further testified that there would be no jobs available should the individual have to miss more than one day of work each month. (R. at 64-65.) As noted above, Leizer's assessment indicates that Chandler was moderately limited in various work-related abilities, including her ability to complete a normal workday or workweek. (R. at 895-97.) Even Abbott's assessment found that Chandler had a seriously limited, but not precluded, ability to demonstrate reliability. (R. at 766.)

While the ALJ is not bound to accept a medical source's opinion as to a claimant's residual functional capacity, he must consider any such opinion and explain what, if any, weight was given to it or why he chose to reject it. *See* 20 C.F.R. §§ 404.1546, 404.1527 (2006); *see also King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980). In this case, the ALJ did not address the mental assessment completed by Leizer nor did he present these limitations to the vocational expert. Furthermore, while the ALJ discussed Spangler's assessment, he offered no explanation as to whether he was accepting or rejecting this assessment. (R. at 25.) Thus, I cannot find that substantial evidence exists in the record to support the ALJ's finding that Chandler had the mental residual functional capacity to perform her past relevant work.

Furthermore, I note that the vocational expert stated that an individual could perform jobs existing in significant numbers in the national economy as long as her problem with reliability was not interpreted to cause her to miss one day of work a

month. (R. at 64-65.) The ALJ did not find that Chandler's problem with reliability would not cause her to miss one or more days a month. Instead, the ALJ simply adopted Abbott's assessment, which stated that Chandler's ability to demonstrate reliability was seriously limited, but not precluded. Therefore, the facts on which the vocational expert based her opinion do not agree with the facts as found by the ALJ. Therefore, the vocational expert's opinion cannot provide substantial support for the ALJ's finding that Chandler could perform her past relevant work or other work. *See Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989).

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1.  Substantial evidence exists to support the ALJ's finding with regard to Chandler's physical residual functional capacity;

2.  Substantial evidence does not exist to support the ALJ's finding with regard to Chandler's mental residual functional capacity;

3.  Substantial evidence does not exist to support the ALJ's finding that Chandler had the residual functional capacity to perform her past relevant work as a cashier and insurance billing clerk; and

4.  Substantial evidence does not exist to support the ALJ's finding that Chandler was not disabled under the Act and was not entitled to benefits.

-21-

# RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Chandler's motion for summary judgment, deny the Commissioner's motion for summary judgment, vacate the Commissioner's decision denying Chandler benefits and remand the case to the Commissioner for further consideration of Chandler's mental residual functional capacity and resulting ability to work.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(c) (West 2006):

> Within ten days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, Chief United States District Judge.

-22-

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED:        This 16th day of February 2007.

/s/ _Pamela Meade Sargent_
U<small>NITED</small> S<small>TATES</small> M<small>AGISTRATE</small> J<small>UDGE</small>